Will the argument next in Cedeno v. Sessom, 21-2891. Please proceed. Good morning, Your Honors, and may it please the Court, my name is Sarah Adams, and I represent the appellant, Argent Trust Company, but I'll be speaking on behalf of all of the appellants this morning. I'd like to reserve three minutes for rebuttal, if I may. Of course. Your Honors, Mr. Cedeno has come into court claiming rights under an ERISA plan. Since the moment that plan was established, the plan's governing document included an individualized arbitration provision, and that provision is enforceable because it allows Mr. Cedeno to pursue every remedy to which he holds a substantive right under ERISA. The District Court's error was in misapprehending the nature of an ERISA participant's right. While we were briefing this appeal last summer, the Supreme Court reiterated in the Viking River Cruises case that what matters is whether the arbitration provision seeks to alter or abridge substantive rights, or whether it merely changes how those rights will be processed. The arbitration provision at issue here does not alter or abridge Mr. Cedeno's substantive rights. That's because the substance of an ERISA right in the defined contribution plan context is to recover for one's own individual plan account. That is all Mr. Cedeno is entitled to, and the arbitration provision affords him that possibility. Well, aren't there statutory remedies that go beyond recovering the funds in your account? Replacing the trustee, things like that, replacing fiduciaries. Those would be remedies that would be fully available under the statute. And I gather, aren't, in your view, available through the arbitration process consistent with the arbitration agreement, the individual arbitration agreement? In our view, Your Honor, they are available to him. All of those remedies are available. So, yes, ERISA does afford participants the ability to pursue equitable relief. And in our view, this arbitration language allows him to pursue those equitable remedies. And I'll explain why, because it's a little different, the conclusion we're urging, from what the Seventh Circuit held in Smith v. Triad. Please explain, because I'm having a little trouble. Absolutely. And so it goes to the language in the arbitration provision where the provision says that the Where are you looking? It's page 105 to 106 of the appendix. Thank you. And it specifically states that a claimant can get such other remedial or equitable relief as the arbitrator deems proper, so long as that relief, I'll paraphrase a little bit because it's quite long, but it doesn't include the provision of additional benefits or monetary relief to somebody other than the claimant, and it's not binding on the administrator or trustee with respect to someone other than him. So if you were to seek an equitable remedy such as removal of the fiduciary, and let me note, that is not at issue in this case, so we're in a purely hypothetical realm here, that the argent is no longer the fiduciary. But to follow the logic out, this is not additional benefits or monetary relief for someone else, and it's not binding. What this provision is saying is the arbitrator cannot issue a ruling that is binding that some other participant could come into court, to a federal court, to enforce this arbitration award and say, hey, I'm not Mr. Cedeno, but I understand you made an award of equitable relief. I want to enforce it. The proposition is that if removal of the fiduciary is necessary to make Mr. Cedeno whole, to provide him a remedy for his own harm, that that's available in arbitration. Yes. Now, it's true that that's not, and so then the arbitration clause, in your view, really only prohibits providing money to other people. That is correct. Mr. Cedeno just can't stand in somebody else's shoes and get money for those people, but he can get whatever is necessary to provide a remedy to him. That is exactly right. Does that entail rescission of the transaction here? That is a, yes, all of the remedies are available. It might entail removal of the fiduciary. It might entail lots of things that have plan-wide consequences, right? Right, and the language here. So we've said that when you're bringing a claim under 502A2, that if there's consequences for other members of the plan, you need to have kind of class-action-like procedures where there's notice to other participants so that it affects their rights, but it seems like here what could happen is Mr. Cedeno could actually go in and get plan-wide relief, which is removal of fiduciary or rescission of the transaction or so on, but other people wouldn't be represented, right? Because the whole idea is an individualized arbitration. Right. I guess my question is, is that a problem? It's not a problem for him to have to seek an individual remedy and to be awarded it, if the arbitrator so chooses, and to allow other participants to pursue their own remedies, and, in fact, that's exactly what the. . . I don't know if that's the problem that Judge Menasci was asking. All right, so if we think that when you are representing the plan and you get a remedy that has consequences for everybody in the plan, we think that there needs to be some kinds of procedures to protect the interests of the other people. It sounds like this scheme would preclude that, right, because you have an individualized arbitration in which you might have plan-wide consequences, like the removal of a fiduciary or the rescission of a transaction, but there would be no representation for other plan participants, right? Your Honor, I would say that if. . . And maybe the answer is that that's not really required, and maybe our precedent has been overtaken, but I'm curious how it interacts. Your Honor, I would say he is able to pursue his individual remedy for his own account. If there are consequences to other plan participants, then that is the enforceability of any arbitration ruling that could have those consequences, would be a matter for a federal court in enforcing an arbitration award to consider issues of preclusion and the preclusive effects of an arbitration award, and that's exactly what the Department of Labor, in the Ruan case that we cited in our reply brief, said there's nothing wrong with that. Individuals can pursue their remedies, and it may be that one participant pursues one remedy, the class of participants might pursue other remedies, and the Secretary of Labor may bring his or her own suit, and that's the position that the Department of Labor took in the past. I don't know why they've taken the opposite position here, but they make the very valid point in that brief that the courts have well-developed bodies of law to consider the effects of arbitration awards, and that is a decision for down the road if we should ever get to that place, but not something that allows us to overcome the fundamental value of arbitration that's embodied in the FAA. And the FAA, so I guess taking it from the other direction, since we have said that whenever you go and get relief for somebody else, that you stand in the shoes of other planned participants, you need to have class action type procedures, then the only way to have individualized arbitration procedures in this kind of a case is to say the participant, when they bring arbitration, can't get remedies for other members of the plan, right? Right, and because he can't get- So that means that you need to have this kind of provision in order to have individualized arbitration procedures, and we know the FAA protects the kind of agreement to proceed by individualized arbitration. Right, and in Viking River and in the Lamps Plus case, the Supreme Court went on at length about how if we don't allow the individualization of arbitration, then we've lost the very point of the FAA. Right, so the FAA protects that, and so the argument would have to be that ERISA precludes it, right? That ERISA conflicts with the provision of individualized arbitration in these kinds of cases. If ERISA does preclude this type of provision, then yes, it does have to fall to the FAA. Right, and so I guess we have these arguments about tensions between the way this would work with ERISA, and maybe there are such tensions, but the Supreme Court's given us a test that says there needs to be a clear conversional statement that it's not allowed, and I guess we don't have that in ERISA. Well, I agree, Your Honor, and to the tension point, I think that tension is not come to fruition in a situation where you have individualized the proceeding because everything in the language of this provision says it's not going to pull in all of those absent plan participants. If it were to do that, then yes, you would need to have procedures under Cone v. Kaufman to protect them, but it's not. This is just about his own right to recover for his own plan account. So we've been focused on those aspects of the remedy that he might seek that would necessarily impact everyone else in the plan, even if he's not expressly purporting to represent them. I want to ask, I'm trying to sort through what seems like the simpler part of this, maybe from your perspective, is the money, right? And what I'm struggling with is in LaRue, of course, we had the fiduciary breach was within his individual, like I want this stock, not that stock. This is an ESOP, and the transaction that's challenged is a plan-level transaction, right? It's everybody in the plan is equally impacted by the price at which these stocks were bought and the terms in which they were negotiated. If we leave in place a scenario where one individual plan participant can go to arbitration and get more money because those transactions were deemed to be a breach of fiduciary duty, does that put the plan in some sort of breach of its nondiscrimination obligations that the very same transaction yields more money for this person than that person? Well, that is a very astute ERISA question. Thank you. So what would actually happen if there were an award here is basically money damages, right? And the plan participant, a lot of times in these ESOP cases, they'll plead, we want rescission of the transaction, right? We want to undo this whole thing and just undo it as if the ESOP never purchased this stock. I would submit that they don't actually want that because if the ESOP did not hold the stock, it's not an ESOP anymore, right? An ESOP has to be designed to invest primarily in employer securities. So that rescission remedy is really theoretically possible, but it makes the entire retirement plan go away. So what they're actually seeking, what actually gets awarded in these cases, is essentially money damages. They want the difference between the purchase price and what the fair market value should have been. But if it's effectuated in an equitable way, not write me a check, but adjust my account balance to reflect what it should reflect, wouldn't that be one of the available remedies? Right, within the plan. Within the plan. Yes, of course. It would have to take place within the plan. I do not believe that would cause a tax qualification issue. Typically when we get into settlements of these ESOP cases, they are treated as an additional. We go and consult with the ERISA tax lawyers about how to do it and how to put amounts into an account in a way that is non-discriminatory. Because your question is a good one with respect to the individual participant, but it also comes up in a more complex way when you have participants who have left the plan at certain times. Not everyone is always getting it. Some people may be partially vested. There's a lot of figuring and calculating to do to make sure that all stays within the qualification rules under the Internal Revenue Code. So it's a complex question, but I believe it can be done. And part of where this is taking me is, I think, in your view, the space that LaRue occupies in sort of displacing the Russell analysis in the context of defined contribution plans is pretty big. And I'm wondering whether the particular dynamics of an ESOP would be a limiting principle on the expansiveness of LaRue because almost by definition, the challenges in an ESOP are going to be to conduct that took place at the plan level rather than in the individual account level. It is certainly a breach that would have affected all of the participants. But I would submit, too, that's true of a lot of ERISA litigation. We spend a lot of time on ERISA 401k fee litigation where the same alleged breach affects all the participants. And it is complicated to effectuate remedies in those situations. But it's certainly not without precedent to be able to do that. All right. Thank you very much. Thank you. We have some time for rebuttal. We'll hear from counsel for Cedena. Is that correct? Mr. Cedena. Mr. Cedena. Thank you, Judge Loyer, and may it please the court. Peter Stris on behalf of Mr. Cedena. I think I'd like to begin with what I view as the easiest path to affirmance because the arbitration clause here prohibits all plan-wide relief. And I just heard my friend dispute that, but it's just not true. And so I'd like to start with the provision because it makes this case very simple. Yeah, would you turn? Yes, please. So if you look at A105, I'm talking about section 1710F. Here's what it says. Claimant may not seek or receive any remedy which has the purpose or effect of providing additional benefits or monetary or other relief. That is the only thing that I've highlighted. Okay. And just to be clear, Judge Loyer, that prohibits every single non-monetary remedy under 502A2, not just full loss restoration and disgorgement. It would prohibit fiduciary removal and reappointment. It would prohibit rescission of the transaction. It would prohibit invalidation of the indemnification provision. To quote the words of – But why does it say that? It says the purpose or effect of providing additional benefits or monetary or other relief to any employee, participant, or beneficiary other than the claimant. So if there was some kind of remedy that was necessary to provide relief to the claimant, the fact that it would have consequences for other people wouldn't run afoul of that provision. It most certainly would because what the provision says is no remedy can be awarded that has the effect of providing other relief. Providing additional benefits or monetary or other relief. Or other relief. But it's all prefaced with additional, right? It's additional on top of what's necessary to make the claimant – to repair the claimant himself, right? If you get invalidation of an indemnification provision, for example, that provides relief to the claimant or rescission of the follow-on loan transaction here, which, by the way, is something we saw in our complaint and which is a very real thing. It provides relief to Mr. Cedeno. But it also obviously has the effect of providing relief to all of the other participants. To just quote what the Seventh Circuit said in Smith, just like the removal of a fiduciary, the appointment of a new one cannot have anything but a plan-wide effect. Right, I understand. But the defendant's – the appellant's position is that that's not additional benefits or relief because that's what's necessary to repair Mr. Cedeno. And so what this really prohibits is Mr. Cedeno standing in the shoes of somebody else and getting benefits for that person that is not necessary to make him whole. Well, let me say – But if there is something that's necessary to make him whole that has consequences for other participants, it's not prohibited. And I kind of take – you know, I understand how you're reading this, but it doesn't seem like it is unambiguous. Well, let me say two things, Judge Minoski. First of all, that's not their position. Their position is about 1710G. They ignore 1710F entirely because I think the language is plain. But let me take your argument on its own terms because you've made an argument that they're not making, but I don't think it's a plausible reading of the language. What it says is claimant may not seek or receive any remedy that has the effect of providing additional relief to anyone other than the claimant. I don't see how you could squint and look at that and interpret that to mean that it's not additional relief because it's providing relief to the claimant. Additional relief means it benefits someone else. But the question is what is additional on top of, right? So the paragraph begins, All covered claimants must be brought solely in the claimant's individual capacity and not in a representative capacity, and so you can't have additional benefits. So it means that he can get whatever he can get in his individual capacity and not relief for which a representative capacity would be necessary. Well, so as not to belabor the point, I will leave it with this. If you view the provision that way and differ with the Seventh Circuit and Smith, by the way, the language is exactly the same. I can't move you any more. I don't think it's a plausible reading, but I think it says a lot that my friend is trying to resist and say all of these remedies are available because if they're not, it's textbook prospective waiver. So given the, I see that I have very limited time, I would like to say a few words about the broader issue, which is let's talk about the monetary relief and kind of the elephant in the room. Because ERISA gives plan participants the right to sue on behalf of the pension plan for full relief. If you look at Section 502A2, what it authorizes, and this is the words of the U.S. Supreme Court, is it authorizes participants to sue, quote, on behalf of a plan to enforce the liability creating provisions of 409. And with all due respect to my friend and their interpretation of LaRue, I argued LaRue before the Supreme Court, and I can assure you that in that case, we sought every penny of losses to be restored. There is nothing in that case that remotely suggests that a participant has to or even could seek an individual remedy, pro rata loss restoration. And I don't think I could put it better than Justice Thomas did in his concurrence where he said, quote, on their face, Sections 409A and 502A2 permit recovery of all plan losses caused by a fiduciary breach. So if you sued under the statute, you would be acting to a representative capacity on behalf of the plan. Always. And in fact, we've said that because of that feature of it, you need class action type procedures in that kind of a lawsuit. Oh, I disagree. You said that in Cohen. I don't think that's true. You don't need the full class action procedures, but you need something to notify other participants and allow them to opt out and make sure representatives and that kind of thing. Well, let me be very clear. Here's what you said exactly in Cohen. Quote, plan participants need not always comply with Rule 23 to act as a representative for purposes of Section 502A2. Ultimately, this is a quote, the requirement is only that the plaintiff take adequate steps under the circumstances to properly act in a representative capacity on behalf of the plan. Right, okay. So maybe you think I'm exaggerating by saying class action type procedures, but all I meant was you need to do something to involve other participants and make sure you're acting as a representative. That's uncontroversial, right? I think that's uncontroversial, but I would say that... So we've said that that's always necessary when you're acting in a representative capacity. So in order to have individualized arbitration procedures, you would need to have something like, is it this agreement that says you're not seeking remedies for anybody else, you're not staying in the shoes of anybody else, you're only seeking relief for yourself, right? Well, that points up at the problem here. What the defendants are trying to do is not bargain for a bilateral arbitration. They're trying to take something that's not an individual claim, that's what the Supreme Court has called a single-agent, single-principle claim, and slice it into something different. So you're saying that it's impossible to have individualized arbitration procedures to resolve a 502A2 claim? I would put it a little differently. I would say you could order bilateral arbitration of a 502A2 claim, but it's a bilateral arbitration of the representative claim. The representative in arbitration could seek full loss restoration, full gain disgorgement. That is the core argument that you're making. Yes. But that still would be a representative, it would not be an individualized arbitration because that person would still be representing a class, right? Well, no, no, no. I disagree, Judge Menasci. It would be an individual arbitration of a representative claim. Justice Alito in Viking River just last term explained this critical distinction. This is what he said, and I'll quote, representative actions in which a single agent litigates on behalf of a single principle are part of the basic architecture of much of substantive law. And then he went on to give what he called familiar examples, shareholder derivative suits, trustee actions. And the point was, unlike the procedural device of aggregating a bunch of individual claims, where that procedural right to aggregate is waivable, the substantive right to act as a single agent of a single principle is not waivable. It would be akin to saying you can't get all of your compensatory damage. If I have a 50282 claim about a breach of fiduciary duty and I say I've been deprived of some amount of money or whatever, could the defendants not settle with me by giving me some kind of a settlement that makes me whole? Well... Is the only way to resolve this claim some kind of plan-wide remedy? Essentially, yes. In the 50 years... You can't have individual settlements in these kinds of litigation. Well, I don't want to go that far because you could have many causes of action in a complaint, and I suppose you could settle one but not the other, but to not duck your questions and to answer it directly, and this goes at the core of what this Court said in Cohen v. Kaufman, 50282 claims are representative claims. So not only is it the case that a participant is not required to seek only some sort of pro-rata version of lawsuits, I would tell you that a participant can't do that. If I had a client and I brought a 50282 claim and said I only want to recover some of my lawsuits, that case doesn't make sense. It would be like a shareholder derivative plaintiff saying there was waste to the corporation but what I would like is to figure out if I won how much all the common shareholder stock would be worth more and just give me the appreciation of my stock. It doesn't work that way. What you're saying is that inherent to the nature of the claim is that you're always acting in a representative capacity and always seeking relief for all participants in the plaintiff. Yes, and not only am I saying that, the United States Supreme Court has said that repeatedly. So you are saying you can't really have individualized arbitration in these kinds of... The reason I'm resisting that is maybe you would view it as semantics, Judge Menasseh, but I think you can have individualized arbitration. It's just an individual... Or bilateral. I like the word bilateral. You can have bilateral arbitration of the representative claim. You can say you have to go and arbitrate this. You can't certify a class. But the person is still a representative. You can't certify a class but the person is still a representative. Correct, correct. So you would be able to opt out of... Would you be able to opt out of the notification procedures and all those things that we say in COAN? So my view is that you could write an arbitration provision that said you must bilaterally arbitrate a 502A claim and you cannot seek class certification. That would be enforceable. When you say your view... Well, we'll hear from the government. Okay, go ahead. I say my view. I believe this is correct. So you would then need to arbitrate. And now I want to be very clear about the COAN versus Kaufman implication. I take that case. I arbitrate it. I win. I then have to enforce the arbitration award in court to... I believe that you can comply with COAN versus Kaufman because it does not require class certification. And, in fact, this court went on to say that even in the legislative history, the House bill that would have required class certification that didn't ultimately get enacted had exceptions for if class certification were not available, etc. So I think that as long as you took some action to notify other participants... And this happens all the time. In the Brundle case, for example, where a single plaintiff recovered the full $29 million of ESOP losses after trial... I think I get this argument. What that means is that there's always representative capacity. Always. If the plan or the employer or the administrator of the plan wanted to do what the Supreme Court has described as one-on-one bilateral arbitration and not involve other members, it would need some kind of permission like this. You're saying this is impermissible because it's incompatible with ERISA, right? But this is still the kind of agreement, right? So when the Supreme Court says that the FAA covers agreements to arbitrate for individualized arbitration on the procedures that the parties choose, this is still that type of agreement. Yes, but... And the reason why the FAA doesn't tell us we need to honor the agreement is because it's incompatible with ERISA. Well, I would put it a little differently, and I think what I have swimming definitely in my favor is Viking River. In Viking River, Justice Alito distinguished between what he called the confusion of two types of representative claims. A single-agent, single-principle representative claim and a representative claim where you're going to aggregate a bunch of claims. In that case, they used the prospective waiver doctrine to partially invalidate... to affirm the partial invalidation of an arbitration provision. So in other words, what the court made clear in that case is none of the prior decisions, Epic Systems, Gilmer, et cetera, none of them informed this fact pattern because in all of those cases, the starting point was an individual cause of action. Under the ADEA, you have the right to compensatory damages. You can't aggregate it. Okay, I understand. But you said a moment ago this is the kind of agreement that the FAA would cover, and the reason why we can't enforce it is because it's incompatible with ERISA. No, the reason it can't enforce it is because the FAA has a doctrine that says you have to be able to pursue the cause of action and all of the remedies that you would have in court in arbitration. Judge Menasci, if by that... if that's what you mean by it's incompatible with ERISA, then yes, I agree with that. All right, so what you're saying is it's not that ERISA is saying that this is not permissible. You're saying it's only the effective indication. Yes, and that's a critical distinction because this clear... If Mr. Cedeno can get whole, the only thing that's prohibited is him standing in somebody else's shoes. He's not giving up any prospective rights, right? You're just saying he's giving up the right to seek relief or seek money for other participants in the plan. So that conflates two critical things. It conflates what a single-agent, single-principal representative claim is and what a class claim is. Pregnant in your question, Judge Menasci, is the idea that somehow he is representing other participants. He's not. He's not aggregating claims of other participants. He has the substantive right under ERISA to bring a representative action on behalf of the plan. So that's textbook prospective waiver. It's no different than if under a statute you had the right to bring a shareholder... But a right to bring a representative action on behalf of a plan, doesn't that just sound like what the Supreme Court has said all the time is covered by the FAA? No. You can waive a right to act in a representative capacity? No. And this is why I say if I have one authority that just makes this point crystal clear, it's Viking River. I think Justice Alito couldn't have been clearer when he distinguished between single-agent, single-principal representative claims on the one hand, which are substantive, and the aggregation of a bunch of claims where you are representing others on the second hand. And what he said was the former is a substantive right which you would have had before the creation of Rule 23. It's no different... So if you try and slice it... Even though what we're looking at here is he has a right to seek relief for a breach of fiduciary duty under ERISA, and even under the Arbitration Agreement he also can seek relief for a breach of fiduciary duty. It's just individualized. But they made that up. Because ERISA... What do you mean they made it up? Under ERISA in court, you could not pursue the things that they wrote in the arbitration provision. They made up an individual claim. You will not find in the 50 years of history of ERISA a case where someone sued under 502A2 and said, calculate the total losses and award me my pro-rat aversion. Because that case... It's necessarily a plan-based, plan-wide... Yes. They made it up. But what they did was they were crafting individualized arbitration procedures. No, what they were doing was they wrote... Do you have a limitation on how the remedy is awarded in order to deal... This is still necessary if you wanted to just deal with Cedeno and have every participant in the plan seek their own relief for their own injuries. You would need to have something like this. Your position is it's impossible to do that in the context of a 502A2 claim. So with respect, and I apologize for interrupting, what they did was write a cause of action that does not exist in ERISA to come up with an individual claim so they could shoehorn it into the doctrine they wanted. I mean, come on. I mean, if an arbitrator that's evaluating this kind of claim is going to look to all of the ERISA case law on what a breach of literary duty is and what's required and whether there was a breach, right? They're not inventing some kind of new statute. No, they are. You will not find a single case in the 50-year history of ERISA where this remedy that they've written into the arbitration provision has been sought or awarded. You can't get it. When you say the remedy, are you referring to F or are you referring to... What are you referring to? 1710G. Romanet I or Romanet II. You could not go into court and say, award me my pro rata losses or award me... The Gaines is a better example. If a fiduciary profits and makes a bunch of money off of... But arbitration is never going to be exactly what's available under the statute, right? I don't agree with the whole point of the perspective. We have cases where, you know, what is it, Hittner, I guess, where the statute envisions collective... Gilmer, right? And we have cases, you know, ERISA itself, like obviously walking into court is going to be different than doing an arbitration. So there are things that are going to happen under the statute that will not happen under an arbitration. So the question is whether the substance of what he's trying to vindicate, which is a repair of the breach of fiduciary duty is the same, right? So let me be clear because I don't want there to be confusion of our position on this point. There is obviously a big difference between bilateral arbitration and cases in court. Here's the difference. You're only allowed to pursue your individual claim in arbitration. So the difference is the procedural right that you had in court. So in Gilmer, the ADA arguably gave you the right to aggregate goes away. I agree with that. What I disagree with is it is never the case in arbitration that you can be made to give up some of the claims, the non-procedural aggregative claims that you would have in court. So once you accept that 502A2 is a representative claim, it cannot be sliced. And so the premise of your question, Judge Benashi, is well, if defendants wanted to take advantage of this jurisprudence in the FAA, don't they have to slice it? And my answer is no. Every one of those cases started with an individual claim. You won't find a single Supreme Court case where a single agent, single principal representative claim was taken. And someone wrote an arbitration provision and said, well, we're going to explain how you can act as a representative, which, by the way, this says. Let me ask you a question. When did these provisions start to appear? That is, F, well, really, G. In this plan or in the country writ large? In the country writ large. You seem to have some familiarity. Yeah, we were litigating it in many circuits. So, I would say that comparatively recently and, you know, and they're changing. So, in light of Smith, now they're being amended and we see things that only limit you in terms of full loss restoration and full gain restoration because they don't want to have to confront the argument about these other remedies. But, this arbitration provision that's in this plan, we started seeing it get put into plans in the 2016 2017 time period. So, sorry, so you're saying that when you have these agreements and the Supreme Court says you need to have, be able to protect the arbitration agreements with individualized procedures, you're saying it has to be that the cause of action originally is individualized, but if there is a cause of action that says that you're generally going to have a representative capacity, you just can't have it. Yes, and it's not me saying that. The Supreme Court said that in Viking River. It invalidated the arbitration provision in that case. It affirmed the invalidation to the extent that it purported to waive the right of an individual to assert California's claim. Now, that may be lost on a quick inspection of the case because that wasn't really the fight in the case. The real money was over whether you could aggregate other people's claims. Why is that his right? So, if in fact, under the arbitration agreement, if Mr. Cedeno can be made whole and all injuries to him can be in the plan. It is the plan's right. The whole point of a 502A2 claim is that there has been an injury to the plan. Now, because obviously the Department of Labor can't bring every case and breaching fiduciaries aren't going to sue themselves, Congress made the decision to create a representative cause of action where one equitable holder who has article 3 standing ... That's right. But isn't that sort of arbitrary? So, if the Congress provides for aggregation of claims, the way it writes in the statute is up front, it says we're going to aggregate these claims for all plan participants or something, then the FAA says you have to allow participants and the plan to opt out of that. But if the way they write it is the nature of the cause of action is that it is a   of action. Now, I don't know how to answer the normative aspect of that question, but what I can tell you is it's exactly what the Supreme Court has said. The Court couldn't have been clearer when it said that these single agent, single principle representative actions are part of the basic architecture of much of substantive law. The Supreme Court didn't think it was an arbitrary distinction. It thought one was a type of claim that                  was about a purpose and the significant as the Court has called it value of such large litigation when retirement plans hold millions and sometimes billions of dollars of value in the first place which was a primary driver of a risk not just to protect benefits but to encourage employers to want to undertake this endeavor. I'm glad to get back to Viking River because Mr. Stris' explication of that case was  informative. The problem for him is that an ERISA claim is not like a single participant single agent claim. And he tells us he knows all about what LaRue told us because he argued it but he's not like a key tam action. You do not stand in the shoes of the plan. And I would direct you to 140 Supreme Court 1615 and it's the pin site is 1620. And the Supreme Court said the plans claims have not been legally or contractually assigned to Full or Smith the plaintiffs. And they say CF a key tam case. And what the court said in that case was that in a divine benefit plan context, if you personally did not suffer the injury, you do not get to come into court. You lack constitutional standing to represent the plan. You have to be personally hurt. And it doesn't matter that that's a defined benefit plan case because 502, A2, and A3, they're the same for defined benefit and defined contribution plans. So if a participant doesn't stand in the shoes of a defined benefit plan where there is one undifferentiated trust corpus, then he certainly does not stand in the shoes of other plan participants in a defined contribution plan where those individual accounts give each participant their own rights. I'm saying that the U.S. Bank tells us that the nature of a 502 claim is not as a representative of the plan. So you're saying the statute doesn't set the person up as a representative of the plan. They're in their individual capacity. But certainly if the litigation were just proceeding under the statute, that individual would be getting relief on behalf of other members of the plan, right? He could, and the error of the district court below is to conflate  permissible with what must happen in every case. And if you look at the epic systems case and all of the cases that the Supreme Court has reviewed, there's  contradiction   statute and the statute. And that's  case. And that's the case. And that's the case. And that's the case. And that's the  The other case which refers to other relief, I would submit that that's a more general provision, and G goes into the specifics of what type of remedies are available, and that's where it makes it clear you can get any sort of remedy from the arbitrator so long as you're not giving some additional benefits to someone else or you're not creating a preclusive effect with respect to others' claims. So you're saying the role of subsection F is what? To preview subsection G? I think it is a broader general statement of the type of remedies that are available. So if we're talking about what relief is available when you bring a 502A2 claim, you have to look at G? Correct. Thank you very much.